## Case No. 4,892.

### The FLYING FISH.

[2 Gall. 373.] [1]

Circuit Court, D. Massachusetts.  May Term, 1815.

[1] [Reported by John Gallison, Esq.]

G. Sullivan and G. Blake, for captors.

STORY, Circuit Justice (after reciting the facts). Under these circumstances, there can be little doubt, that the property must be deemed hostile. It is a general rule of the prize law, that all goods found on board of an enemy's ship, are presumed to be the property of the enemy, unless a distinct neutral character is impressed upon and accompanies them. "Res in hostium navibus praesumuntur esse hostium donec contrarium probetur." Locc. lib. 2, c. 4, n. 11; Gro. de J. B. lib. 3, c. 6, § 6; Bynk. Quest. Jur. Pub. lib. 1, c. 13; 2 Voet ad Pand. p. 1156, § 5. If a neutral will ship his goods in an enemy's ship, he is bound to send with them such documents, as shall clearly evince their neutral character. If he neglect so to do, he justly incurs the penalty of forfeiture. Any other course would subject the prize tribunals to endless impositions and frauds; and enable the enemy, by suppressing the documentary evidence of his ownership, to obtain in all cases the benefit of further proof, and to evade the just rights of cruisers. In the present case, considering the number of shipments, it is almost incredible, that there should not have been some invoices and letters of advice on board; and it is quite as difficult to believe, that the whole cargo was neutral. The only possible explanation is that asserted to have been made by the master, that the invoices and letters were transmitted by land to Trieste; and this, if true, affords an irresistible presumption of the hostile character of the cargo.

Under these circumstances, I should not have felt the slightest hesitation in pronouncing a decree of general condemnation, if it had not been for a very great irregularity on the part of the captors. I refer to the omission to bring in the master or mate of the Flying Fish. The only witnesses, brought in and examined on the standing interrogatories, were one seaman and the cook, neither of whom has spoken, nor could in the nature of things be presumed to speak, to the ownership of the cargo. It is matter of surprise, that, at so late a period in the war, captors should have been so ignorant of their duty, as to suppose, that they were at liberty to discharge the officers of the ship, without any examination before the prize court; or so negligent, as to suppose every frivolous pretence would authorize them to omit it. It is an imperative rule of the prize court, that the master or other principal officer of the captured vessel, should be examined in preparatory, to testify to the proprietary interest of the vessel and cargo. This rule, so indispensable to the regular execution of judicial authorities, is one of the last, which this

court has been disposed to relax, since a reasonable time has elapsed after the war, to enable the captors to understand the nature of their duties. The rule is also enforced, in the most positive manner, by the president's instructions accompanying the prize commission. The absence, therefore, of the regular evidence, cannot but awaken suspicion; and, in some cases, would induce the court to apply heavy penalties against the captors. Cases have even occurred in this court, in which this omission, combined with other circumstances, has afforded such a conclusive presumption of fraud, that condemnation of the property has been adjudged in favor of the United States. In the British prize courts, the omission has been reproved in a very severe manner, and sentence of condemnation has been withheld, even in the clearest cases, until it has been supplied, or satisfactorily accounted for. The Speculation, 2 C. Rob. Adm. 293–296; The Anna, 5 C. Rob. Adm. 373, 385f, note a.

The affidavits, brought in by the captors to account for this omission, disclose a very humane motive, but certainly form no legal justification or excuse. The master, or chief officer, ought to have been left on board of the prize, and it was a great irregularity to remove both of them. Taking it, however, as a case of compassion, I am disposed to adopt a more indulgent course, than I should otherwise have pursued. In no event should I have allowed further proof; for the owners of the property, whether neutral or hostile, had, by suppressing, or omitting to put on board, any documentary evidence of property, completely forfeited all title to relief. The most, that could in their favor have been allowed, would have been to suspend a decree for a year and a day, to give opportunity for proof of any misconduct on the part of the captors in dismissing the master. Having no doubt that the property in the present case belonged to British subjects, I shall condemn the whole as good prize to the captors.